UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IVEN B. JONES III,

               Petitioner,

v.                             Case No. 3:04-cv-1003-J-32MCR

JAMES R. MCDONOUGH,[1] et al.,

               Respondents.

_____

**ORDER**[2]

**I. Status**

     Petitioner, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on September 29, 2003. He challenges his 2001 state court conviction for armed burglary and possession of burglary tools. Petitioner contends that his nolo contendere plea was involuntary and that he received ineffective assistance of counsel.

_____

[1] James R. McDonough, the Interim Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

On March 29, 2004, Respondents filed a Response to Petition (Doc. #12) (hereinafter Response).   Respondents also filed an Appendix (Doc. #13) in support of the Response.[3]  Petitioner filed a Traverse to Respondents' Response (Doc. #15) on April 26, 2004. Petitioner's Supplemental Traverse to State's Response (Doc. #18) was filed on February 2, 2005.  Petitioner also filed a Notice of Supplemental Authority (Doc. #20) on June 8, 2005.[4]

## II.  Evidentiary Hearing

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.   A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.

---

[3] The Court will refer to the exhibits in the Appendix as "Ex."

[4] The state court procedural history is set forth in the Response.  See Response at 3-6.  Respondents assert, and this Court agrees, that this action was timely filed and that Petitioner exhausted all of his grounds in state court.  Therefore, the Court will not summarize the state court procedural history.

denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing
will not be conducted by this Court.

### III.  Standard of Review

On April 24, 1996, the President signed into law the
Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-
132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was
filed after the effective date of AEDPA, the Court will analyze
Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA.
Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert.
denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215
n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox
v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998),
cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review
under AEDPA and has explained:

> The Anti-Terrorism and Effective Death
> Penalty Act of 1996 (AEDPA) governs this
> [action] and limits our review of the
> decisions of the state courts:
>
>> A federal court may not grant a
>> petition for a writ of habeas corpus
>> to a state prisoner on any claim
>> that has been adjudicated on the
>> merits in state court unless the
>> adjudication (1) resulted in a
>> decision that was contrary to, or
>> involved an unreasonable application
>> of clearly established federal law,
>> or (2) resulted in a decision that
>> was based on an unreasonable
>> determination of the facts in light

3

of the evidence presented in state court.

<u>Clark v. Crosby</u>, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted).  A general framework of substantial deference governs our review of every issue that the state courts have decided:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

> . . . .

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

> Williams v. Taylor, 529 U.S. 362, 405-07, 120
> S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th

Cir.), cert. denied, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." McIntyre v. Williams, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert.

denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine

whether the state court's adjudication resulted in a decision that

was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding. Furthermore,

AEDPA "also directs that a presumption of correctness be afforded

factual findings of state courts, which may be rebutted only by

clear and convincing evidence. See id. at § 2254(e)(1). This

presumption of correctness applies equally to factual

determinations made by state trial and appellate courts." Bui v.

Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)

(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## IV. The Applicable Law

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting

6

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

7

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand."   Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

In order to succeed on an ineffective assistance of trial counsel claim concerning a nolo contendere plea, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and, (2) a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded nolo contendere and would have insisted on going to trial.   See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985) (extending the test adopted in Strickland to cases involving guilty pleas).

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.   See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground
> that counsel did not provide the defendant

8

with 'reasonably competent advice.'"  Cuyler
v. Sullivan, 446 U.S. 335, 344, 100 S.Ct.
1708, 1716, 64 L.Ed.2d 333 (1980) (quoting
McMann v. Richardson, 397 U.S. 759, 770, 90
S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); see
Hill v. Lockhart, 474 U.S. 52, 58-59, 106
S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985)
(holding that, in the plea context, a habeas
petitioner establishes ineffective assistance
of counsel by demonstrating that counsel's
advice and performance fell below an objective
standard of reasonableness, based upon which
he pled guilty).  For a guilty plea to
"represent an informed choice" so that it is
constitutionally "knowing and voluntary," the
"[c]ounsel must be familiar with the facts and
the law in order to advise the defendant of
the options available."  Scott v. Wainwright,
698 F.2d 427, 429 (11th Cir. 1983).  "The
failure of an attorney to inform his client of
the relevant law clearly satisfies the first
prong of the Strickland analysis . . . as such
an omission cannot be said to fall within 'the
wide range of professionally competent
assistance' demanded by the Sixth Amendment."
Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White,
J., concurring) (quoting Strickland v.
Washington, 466 U.S. 668, 690, 104 S.Ct. 2052,
2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court nolo contendere

plea only for compliance with constitutional protections.

This court has concluded that "[a] reviewing
federal court may set aside a state court
guilty plea only for failure to satisfy due
process:  If a defendant understands the
charges against him, understands the
consequences of a guilty plea, and voluntarily
chooses to plead guilty, without being coerced
to do so, the guilty plea . . . will be upheld
on federal review."  Stano v. Dugger, 921 F.2d
1125, 1141 (11th Cir.) (en banc), cert.
denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).

Thus, in order for a nolo contendere plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily. Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id.; United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).
>
> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause. Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. Santobello v. New York, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).
>
> For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably

> informed of the nature of the charges against
> him, the factual basis underlying those
> charges, and the <u>legal</u> <u>options</u> <u>and</u> <u>alternative</u>
> <u>that</u> <u>are</u> <u>available</u>.'" <u>Stano</u>, 921 F.2d at 1142
> (citation omitted) (emphasis added).
> Voluntariness implicates "[i]gnorance,
> incomprehension," and "inducements" as well as
> "coercion, terror" and "threats." <u>Boykin v.</u>
> <u>Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709,
> 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d
> at 1141. Thus, "[i]gnorance of the
> consequences of a guilty plea may require its
> rejection." <u>Stano</u>, 921 F.2d at 1141 (citing
> <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## V.  Findings of Fact and Conclusions of Law

### A. Ground One

As noted previously, Petitioner contends that his nolo contendere plea was involuntary and that he received ineffective assistance of counsel. Specifically, in ground one, Petitioner contends that defense counsel told Petitioner "that there was no way he could beat the case" and that the prosecutor would seek life imprisonment if Petitioner proceeded to trial. Petition at 5. He also alleges that defense counsel "failed to advise [Petitioner] of the essential elements of the crimes (intent) that had to be proven in order to be convicted of the crimes charged. If not for counsel's errors, [Petitioner] would not have pleaded nolo contendere, but would have proceeded to have a jury trial." <u>Id</u>.

Petitioner raised this claim in his motion for post-conviction relief, and after identifying <u>Strickland</u> as the controlling legal authority, the trial court adjudicated the claim as follows:

11

The Defendant's first claim is that counsel was ineffective for failing to advise him of the elements of the crimes. He alleges that, had he known that the State was required to prove intent, that he would not have entered his plea and he would have exercised his right to a jury trial. However, the Defendant accepted the factual basis laid by the State at the plea hearing.[5] This factual

---

[5] The prosecutor set forth the following factual basis during the plea hearing:

If this case were to go to trial, we would show on August the 11th, 2000, this defendant and another individual were seen on the roof of a bank. The bank is located at 9405 South Highway 17-92 [sic] in Maitland. It was known as the Gulf State's Federal Credit Union and Gary Teramay was the assistant vice president of the bank.

They were seen by a lady by the name of Ella Mar who was having coffee on her back patio. She lived in a structure that was directly behind the bank and prior to it getting light that morning, this is in the very early morning hours, she could hear a power saw going and thought it to be a little bit odd. And when it got a little bit lighter when she was able to see, she could see that they had sawed a hole in the roof of the bank and she called the police.

Seminole County Sheriff's Office responded[.] Theresa Broderson was one of the deputies who responded and upon her arrival they saw the ladder next to the bank, there was a circular saw with an extension cord at the base of the ladder. She observed the defendant partially in this hole that had been cut into the attic.

And the deputies inquired of the defendant and the co-defendant whose name was Tarlbert about why they were on the roof and Tarlbert produced a work order which turned

basis alleged that the Defendant was inside
the hole in the ceiling. (See excerpt of plea
hearing, attached as Exhibit B).  This Court

out to be a false work order.  There was no
leak in the roof, no work had been ordered by
anyone at the bank.  The work order claimed
they were there to fix a leak.

A search of the immediate area revealed
that inside the bag, a duffle bag that was
down in the attic with this defendant
contained among other things a hammer and a
firearm, a fully loaded revolver.

There was another duffle bag up on the
roof and in that bag were other items such as
a ski mask with holes cut in the eyes, there
was two [sic] pairs of latex gloves, there was
flex-cuffs [sic] in order to tie people up.
There was rope, there was duct tape, there
also laying on the roof underneath some black
clothing right next to the vent which was
adjacent to the hole was a skeleton mask, a
white and black skeleton mask kind of like a
Halloween mask and that was found there as
well.

And the entry of Mr. Jones into the attic
portion of the structure was without the
consent of anyone at the bank.

Also the evidence we suggest would
demonstrate that the defendant entered with
the intent to commit either a robbery or a
theft within that bank although neither was
accomplished.

And the burglary tools included the
hammer[,] there was a pry bar, also certainly
the saw, the circular saw, the ladder, there
were a number of items that would qualify to
be a burglary tool.  And all these events
occurred in Seminole County, Florida.

Ex. B at 13-15.

> will not go behind the plea of no contest to
> address the validity of the claim.  See *Stano*
> *v. State*, 520 So.2d 278 (Fla. 1988).  The
> Defendant is not entitled to relief as to this
> issue.

Ex. G at 1-2.

The trial court did not address the first portion of Petitioner's claim (that defense counsel told Petitioner that there was no way he could beat the case and that the prosecutor would seek life imprisonment if Petitioner proceeded to trial). Furthermore, the trial court did not address Petitioner's contention that, but for counsel's alleged errors, he would not have entered his plea and would have proceeded to trial.  Thus, this Court will address this ground on the merits rather than deferring to the state court's ruling with respect to this claim.

This Court finds that Petitioner's claims are conclusively refuted by the record.  The written plea agreement that the Petitioner signed states, in pertinent part, the following:

> I enter this plea freely and voluntarily.
> No person has forced, threatened or coerced me
> into entering this plea.
>
> I am satisfied with the representation my
> lawyer has given me and I have fully discussed
> my case and this plea agreement with my
> lawyer.  I fully understand the nature of the
> charges against me and the contents of this
> agreement.

Ex. A at 87.

Furthermore, during the plea colloquy, the Petitioner testified, under oath, that he had read the plea agreement, that he

14

understood the plea agreement, and that everything in the plea agreement was true and correct. Ex. B at 7-8. Petitioner also testified that he was entering his plea freely, voluntarily, knowingly and intelligently. Id. at 8. He acknowledged that nobody had forced, threatened or coerced him into entering his plea. Id. He also acknowledged that he was satisfied with the services of his attorney. Id. at 9.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."

Here, Petitioner's sworn testimony during the plea hearing refutes his claim that counsel coerced or threatened him into entering a nolo contendere plea by stating that there was no way to win and that the prosecutor would seek life imprisonment if Petitioner proceeded to trial. Furthermore, at the plea hearing, Petitioner affirmed that the representations in the written plea agreement (including the statements that he fully discussed his case with his lawyer and that he fully understood the nature of the charges) were true. Thus, his claim that counsel failed to advise him of the essential elements of the crimes is refuted by the

record.  In sum, Petitioner's claims of deficient performance are conclusively refuted by his own sworn representations to the contrary during the plea hearing.

Furthermore, the Court finds that Petitioner has not shown the requisite prejudice.  As set forth by the prosecutor in the factual basis for the plea during the plea hearing, there was overwhelming evidence of guilt that was available to be presented at trial. Thus, the Court finds Petitioner's claim that he would have proceeded to trial absent counsel's alleged errors to be incredible.

## B. Ground Two

Petitioner contends that counsel was ineffective for failing to advise him that sentencing as a habitual offender was permissive and not mandatory.  He asserts that, had he been so advised, he would not have pleaded nolo contendere and would have proceeded to trial.  He also claims that counsel's failure to so advise the trial court deprived Petitioner of a fair sentencing hearing.

Petitioner raised this claim in state court as issue two in his motion for post-conviction relief, and after identifying Strickland as the controlling legal authority, the trial court adjudicated the claim as follows:

> The Defendant's second claim is that counsel was ineffective for failing to advise him that sentencing as a habitual felony offender was permissive and not mandatory.  He alleges that he would not have entered his plea if had known this.  However, this Court

16

cannot understand how this affected his decision-making process. His plea agreement did not concede that he would be sentenced as a habitual felony offender. He was aware that the State was trying to have him classified as such prior to entering his plea. (See Notice of Intention to Seek Sentencing as Habitual Felony Offender, attached as Exhibit C).[6] Before the Court accepted his plea, he was told that the State would be seeking the enhanced penalties. (See excerpt of plea hearing transcript, attached as Exhibit D).[7] Finally, the State was required to prove that he was a habitual felony offender at the sentencing hearing. (See excerpt of sentencing hearing transcript, attached as Exhibit E).[8] Since the Defendant knew of the possibility of receiving an enhanced sentence prior to entering the plea, and since the State followed the statutory requirements in having the Defendant declared a habitual felony offender, the Defendant is not entitled to relief on this ground.

Ex. G at 2.

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed on appeal. See Ex. L. Thus, there are qualifying state court decisions from both the state trial and appellate courts. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown

---

[6] See Ex. G at 10.

[7] See Ex. G at 11-15.

[8] See Ex. G at 16-19.

<u>v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, this Court finds this claim to be without merit for the reasons stated by the Respondents in their Response. <u>See</u> Response at 12. Finally, insofar as Petitioner contends that counsel was ineffective for failing to advise the trial court that habitual offender sentencing was permissive, this claim is without merit. It was objectively reasonable for counsel to assume the trial judge knew that imposition of the habitual offender sentence was not mandatory.

### C. Ground Three

Petitioner contends that counsel was ineffective for failing to advise him of his right to produce exculpatory evidence (that it was physically impossible to see the hole in the roof from the ground level around the bank) and for failing to investigate the crime scene. Petitioner raised this claim in state court as issue

three in his motion for post-conviction relief, and after identifying Strickland as the controlling legal authority, the trial court adjudicated the claim as follows:

> The Defendant's third issue is that counsel was ineffective for failing to investigate the crime scene. The Defendant alleges that he could not have been in the hole in the ceiling, and counsel would have discovered this had he gone to the bank. However, the Defendant accepted the factual basis laid by the State at the plea hearing. This factual basis alleged that the Defendant was inside the hole in the ceiling. (See Exhibit B). This Court will not go behind the plea of no contest to address the validity of the claim. See *Stano*.
>
> Furthermore, this Court, prior to sentencing the Defendant, conducted a *Nelson*[9] hearing to determine whether counsel should be discharged due to ineffectiveness. The Defendant raised this precise ground during the hearing. Counsel stated that he did not need to go to the bank because there were several photos of the scene disclosed during discovery. Based upon counsel's testimony at this *Nelson* hearing, this Court found that counsel was not ineffective. (See excerpt of sentencing hearing transcript, attached as Exhibit F).[10]   Since the Court fully

---

[9] Nelson v. State 274 So.2d 256 (Fla. 4th DCA 1973) (holding that if a defendant requests discharge of his court-appointed counsel prior to trial, the trial judge should make an inquiry of the defendant as to the reason for the request and, if incompetency of counsel is assigned as the reason, should make a sufficient inquiry of the defendant and his appointed counsel to determine whether there is cause to believe that counsel is not rendering effective assistance to the defendant). The Court notes that, in this case, the Nelson hearing was held at the sentencing hearing because Petitioner did not request to discharge counsel until after he entered his nolo contendere plea.

[10] See Ex. G at 20-23.

> addressed the factual issue raised in the
> Defendant' 3.850 motion, the Defendant is not
> entitled to relief on this claim. *See Brown
> v. State*, 770 So.2d 1285 (Fla. 3d DCA
> 2000).[11]

Ex. G at 2 (footnote omitted).

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed on appeal. See Ex. L. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, this Court finds this claim to be without merit because Petitioner has not shown the requisite prejudice. At the time Petitioner entered his nolo contendere plea, he knew that it was allegedly physically impossible to see the hole in the roof of

---

[11] In the Brown case, the court found that the trial court erred by summarily denying the appellant's Rule 3.850 motion (alleging that he received ineffective assistance of counsel because his attorney failed to conduct an adequate pre-trial investigation) by relying on the transcript of defense counsel's testimony given at a Nelson hearing because the testimony at the Nelson hearing did not fully address the factual issues raised in the appellant's Rule 3.850 motion.

the bank from the ground level around the bank and he knew that counsel failed to investigate the crime scene.  However, despite this knowledge, he elected to enter his plea.  Furthermore, as stated in the discussion of ground one, there was overwhelming evidence of guilt that was available to be presented at trial. Thus, the Court finds Petitioner's claim that he would have proceeded to trial absent counsel's alleged errors to be incredible.

### D. Ground Four

Petitioner contends that counsel was ineffective "due to his erroneous advice and undue influence[.]"  Petition at 9. Specifically, Petitioner alleges that counsel used "extreme duress to get [Petitioner] to plead out."  Id.  Furthermore, he claims that defense counsel advised him that he would not receive more than a twenty-year sentence if he threw himself upon the mercy of the court.

Petitioner raised this claim in state court as issue four in his motion for post-conviction relief, and after identifying Strickland as the controlling legal authority, the trial court adjudicated the claim as follows:

> The Defendant's fourth claim for relief
> is that counsel advised him that his sentence
> would not exceed 20 years.  Again, during the
> Nelson hearing, counsel stated that he advised
> the Defendant that, as a result of the plea,
> he would receive more than 15 years, but less
> than life. (See excerpt of sentencing hearing
> transcript, attached as Exhibit G).   The

> Defendant's 30-year sentence fell within this
> range.  The record refutes the Defendant's
> claim,[12] and therefore, he is not entitled to
> relief as to this issue.

Ex. G at 3.

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed on appeal.  <u>See</u> Ex. L. Thus, there are qualifying state court decisions from both the state trial and appellate courts.  Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## E. Ground Five

Finally, Petitioner contends that he was denied effective assistance of counsel due to the cumulative errors of his attorney, as set forth in grounds one through four.  Petitioner raised this claim in state court as issue five in his motion for post-

---

[12] The court notes that Petitioner's testimony during the plea colloquy also refutes his claims.  The trial judge specifically notified Petitioner that the sentencing range was between fifteen years and life imprisonment, and Petitioner acknowledged that he understood.  Ex. B at 6.  Petitioner also testified that he had not been coerced or promised anything to induce him to enter his plea. <u>Id</u>. at 8.  Additionally, he testified that he was satisfied with the services of his attorney.  <u>Id</u>. at 9.

conviction relief, and after identifying <u>Strickland</u> as the controlling legal authority, the trial court adjudicated the claim as follows:

> The Defendant's fifth claim is that the cumulative effect of these errors have [sic] deprived him of due process of law and made his plea involuntary. Since this Court has found that there were no errors committed and that counsel was not ineffective, the Defendant is not entitled to relief for this issue.

Ex. G at 3.

This claim was rejected on the merits by the trial court and the trial court's decision was affirmed on appeal. <u>See</u> Ex. L. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Furthermore, this Court finds this cumulative error claim to be without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. <u>See</u> <u>Yohey v. Collins</u>, 985

23

F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

<u>Miller v. Johnson</u>, 200 F.3d 274, 286 n.6 (5th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 849 (2000).  Clearly, Petitioner is not entitled to relief on the basis of this cumulative error claim.

Thus, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of May 2006.

TIMOTHY J. CORRIGAN
United States District Judge

ps 5/5
c:
Iven B. Jones III
Assistant Attorney General Rebecca Roark Wall

24